# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

CARRIE LEA REEVES,     )
  Plaintiff,       )
             )
v.            )   Civil Action No. 3:19-cv-00996
             )   Judge Campbell/Frensley
COMMISSIONER OF SOCIAL   )
SECURITY ADMINISTRATION,  )
  Defendant.      )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 18. Plaintiff has attached an accompanying Memorandum in support thereof. Docket No. 18-1. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 20.

Upon consideration of the parties' filings, the administrative record and applicable law, and for the reasons given below, the Magistrate Judge RECOMMENDS that Plaintiff's Motion for Judgment on the Administrative Record, Docket No. 18, be GRANTED and that this action be REMANDED for further consideration not inconsistent with this Report and Recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   INTRODUCTION

Plaintiff protectively filed her application for DIB on May 3, 2016, alleging that she had been disabled since March 3, 2015 due to Osteoarthritis, Rheumatoid Arthritis, Scoliosis, Fibromyalgia, Endometriosis, Degenerative Disc Disease, Bipolar, and PTSD. Docket No. 11,

Attachment ("TR"), TR 12, 365-66, 453-54.[1]

Plaintiff's application was denied both initially (TR 184) and upon reconsideration (TR 205). Plaintiff subsequently requested (TR 233-34) and received (TR 44-72) a hearing before an Administrative Law Judge ("ALJ"). Plaintiff's hearing was conducted on July 17, 2018 by Judge Kerry Morgan. TR 44. Plaintiff and vocational expert ("VE"), Stephen B. Schnacke,[2] appeared and testified. TR 44.

On November 2, 2018, the ALJ issued a decision unfavorable to Plaintiff, finding that the Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 9-43. Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.
>
> 2. The claimant has not engaged in substantial gainful activity since March 3, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: Unspecified personality disorder, Bipolar disorder and related disorder, Opioid Use disorder, Major depressive disorder, cervical radiculopathy, degenerative disc disease, fibromyalgia, lumbago, CTS, osteoarthritis neuropathy, chronic pain syndrome, history of migraines, COPD (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the

---

[1] The Court notes that Plaintiff has filed several other times for DIB (*See, e.g.,* TR 324-25, 326-32, 333-34), but the only matter currently pending before the Court is the Administrative Law Judge's November 2, 2018 decision with respect to Plaintiff's most recent claim (TR 12-43).

[2] Although the transcript indicates a "Dr. Shanti" appeared at the hearing and testified (*See, e.g.,* TR 44-45, 47, 63-64, 71), the Court believes this to be a typographical error for "Dr. Schnacke," as both Plaintiff in her brief and the ALJ in her decision reference Stephen B. Schnacke as the vocational expert (*See, e.g.,* Docket No. 18-1, pp. 1, 8; TR 12), and Dr. Schnacke's curriculum vitae is included in the administrative transcript as the Resume of the Vocational Expert (TR 551-56).

claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb stairs and ramps, but never climb ladders, ropes, and scaffolds. She can occasionally balance, stoop, kneel, crouch, or crawl. She can have frequent use of the bilateral hands for handling and fingering. The claimant can have no exposure to unprotected heights or hazardous machinery. She can tolerate occasional exposure to fumes, odors, dust, gas, and poor ventilation. Mentally, the claimant can understand, remember and complete simple as well as detailed 1, 2 and 3 step instructions and tasks. She can maintain attention, concentration, persistence or pace in 2-hour segments of time, with customary breaks between segments. The claimant can tolerate occasional contact with the public, and occasional contact with supervisors and coworkers. She can tolerate infrequent change in job duties.

6. The claimant is capable of performing past relevant work as a self-employed cleaner, cashier, and order picker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 3, 2015, through the date of this decision (20 CFR 404.1520(f)).

TR 14-15, 17, 31, 33.

On December 11, 2018, Plaintiff timely filed a request for review of the hearing decision.

TR 288. On October 3, 2019, the Appeals Council issued a letter declining to review the case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner.

This civil action was thereafter timely filed, Docket No. 1, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.    REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

3

## III.     CONCLUSIONS OF LAW

### A.     Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

If the Commissioner did not consider the record as a whole; however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980). Moreover, an ALJ's decision lacks the support of substantial evidence if the ALJ fails to follow agency rules and regulations,

"even where the conclusion of the ALJ may be justified based upon the record." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016), *citing Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (internal citations omitted); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *accord Goppert v. Berryhill*, No. 3:16-cv-02739, 2018 WL 513435, at *4 (M.D. Tenn. Jan. 23, 2018) (Report and Recommendation adopted Mar. 1, 2018, 2018 WL 138533).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her Ainability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

(1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[3] If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

See, e.g., 20 CFR §§ 404.1520, 416.920. See also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Moon, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). See also Damron v. Sec'y of Health & Human Servs., 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. Id. In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must

---

[3] The Listing of Impairments is found at 20 CFR ' 404, Subpt. P, App. 1.

6

rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C.    Plaintiff's Statement Of Errors.

Plaintiff contends that the ALJ failed: (1) to provide sufficient justification for weighing the medical evidence in the record and discounting the medical opinions of physical consultative examiners Dr. Woodrow Wilson, Dr. William Huffman, and Dr. Terrence Leveck; (2) to properly evaluate Plaintiff's credibility; and (3) to properly evaluate Plaintiff's residual functional capacity. Docket No. 18-1, p. 11. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or alternatively, remanded. Docket. No. 18-1, p. 28.

Sentence four of § 405(g), which provides for judicial review of the Commissioner's final decision, states as follows:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v.*

*Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

### 1.    Weight Accorded Medical Opinion Evidence

As part of her application process, Plaintiff underwent five consultative examinations—three of the examinations were physical and two of the examinations were psychological. The physical consultative examinations were performed by: Woodrow Wilson, M.D. (TR 1112-16, dated Sept. 9, 2015); William R. Huffman, M.D. (TR 1498-1502, dated Sept. 13, 2016); and Terrence Leveck, M.D. (TR 1604-09, dated Apr. 7, 2017). The psychological consultative examinations were performed by: Jeffrey W. Viers, M.A. (TR 1186-91, dated Jan. 11, 2016) and Karla D. McQuain, Ph.D. (TR 1515-21, dated Sept. 27, 2016).

Also as part of her application process, Plaintiff's medical records were evaluated by non-examining state agency consultants. The medical evaluations at the initial level were carried out by Robert Estock, M.D. and Robert Heilpern, M.D. (TR 169-82). The medical evaluations at the reconsideration level were carried out by Daniel Walter, Psy.D. and Thomas Thrush, M.D. (TR 185-204).

In her decision, the ALJ weighed and considered the opinions of each consultative examiner by providing a synopsis of each examiner's opinion, followed by the weight each opinion received.

With respect to the opinion of Woodrow Wilson, M.D., the ALJ stated as follows:

> Dr. Wilson's opinion at Exhibit 14F is given some weight insofar as
> it is based on the actual clinical signs and findings. The undersigned

8

notes, however, that the majority of the assessments were based on the claimant's subjective complaints. With regard to the medical source statement, the undersigned agrees the claimant could sit for 6 hours and lift up to 20 pounds occasionally; however, there is no evidence to support a reduction in standing and walking from 2 to 4 hours and thus this portion of the opinion is rejected.

TR 23.

With respect to the opinion of William Huffman, M.D., the ALJ stated as follows:

Dr. Huffman's opinion at Exhibit 27F is given little weight because the limitations are not well supported by the clinical signs and findings and are not consistent with the other evidence of record. Specifically, the suggested limitations do not seem to comport with all the normal findings.

TR 25.

With respect to the opinion of Terrence Leveck, M.D., the ALJ stated as follows:

Dr. Leveck's opinion at Exhibit 33F is given partial weight insofar as they [sic] are based on the clinical signs and findings. However, with regard to limitations in lifting and carrying, this portion of the opinion is given little weight based on claimant's demonstrated lack of full effort as reported by the examiner and false reports. With regard to her back, contrary to claimant's statements to the examiner, there is no record evidence of back surgery and none was recommended for either low back or neck pain. (Ex. 7F/23). There is also no medical evidence of "torn ligaments" in the left shoulder. MRI of the left shoulder in September 2017 was negative. (Ex. 36F/8). There is also no medical evidence of record showing a rheumatologist's assessment for RA.

TR 27.

With respect to the opinon of Jeffrey Viers, M.A., the ALJ stated as follows:

The CE's opinon at Exhibit 19F is accorded great weight based on the clinical signs and findings and because it is consistent with the other evidence of record.

TR 28.

With respect to the opinion of Karla McQuain, Ph.D., the ALJ stated as follows:

9

> Dr. McQuain's opinion at Exhibit 29F s [*sic*] given great weight
> because it is well supported by the clinical signs and findings and is
> consistent with the other evidence of record.

TR 30.

With respect to the opinions of the non-examining state agency consultants, the ALJ

stated as follows:

> The DDS opinions are given great weight because they are well
> supported by the treatment record. However, the more recent
> opinion at Exhibit 21A is accorded greater weight because it is more
> consistent with the evidentiary record as a whole. The undersigned
> has also added some additional postural, manipulative and
> environmental limitations based on the treatment record and
> claimant's testimony.

TR 27.

Plaintiff argues that the ALJ erred by not providing sufficient justification for the weight

she accorded the opinions of consultative examiners Wilson, Huffman, and Leveck. Docket No.

18-1, p. 11. Specifically, Plaintiff maintains that the "ALJ just recited what the experts' reports

summarized" and relies on non-examining state agency physicians. *Id.* at 16. Plaintiff contends

that the ALJ gave more weight to the non-examining state agency consultants and that "the ALJ

should have given controlling weight to the opinions of the consultative examiners because they

are well-supported and not inconsistent with other substantial evidence in the record, as well as,

consistent with Ms. Reeves' testimony." *Id.* at 17.

Defendant responds that the ALJ did consider all of the opinion evidence, and provided

sufficient justification for the weight assigned each. Docket No. 20, p. 4. Defendant avers that

"ultimately, it is up to the ALJ to determine the weight each opinion is due." *Id.* Defendant

contends that Plaintiff's disagreement with the weight assigned to the opinions does not warrant

remand. *Id.* Defendant also argues that the ALJ crafted a residual functional capacity consistent

with the medical opinion evidence of record. *Id.* at 2, 9. Defendant further contends that "an ALJ may properly give weight to a state agency consultant opinion even where the consultant was not able to review the entire medical record." *Id.* at 9.

"The Commissioner has elected to impose certain standards on the treatment of medical source evidence." *Cole,* 661 F.3d at 937. These standards, set forth in administrative regulations, describe (1) the various types of evidence that the Commissioner will consider (20 C.F.R. § 404.1512); (2) who can provide evidence to establish an impairment (20 C.F.R. § 404.1513); and (3) how that evidence will be evaluated (20 C.F.R. § 404.1520b). Such evidence may contain medical opinions, which "are statements from physicians and psychologists . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [ ] symptoms, diagnosis and prognosis," physical and mental restrictions, and what the claimant can still do despite his or her impairments. 20 C.F.R. § 404.1527(a)(2). Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c).

The factors an ALJ should use in weighing the medical opinions for claims filed before March 27, 2017, as here, are the Examining Relationship, Treatment Relationship, Supportability, Consistency, Specialization, and Other Factors that are brought to the agency's attention that "tend to support or contradict the medical opinion." *See* 20 C.F.R. § 404.1527(c). Specifically, the regulations state as follows:

> **(c) How we weigh medical opinions.** Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

> **(1) Examining relationship.** Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.

> **(2) Treatment relationship.** Generally, we give more weight to medical opinions from

11

your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

. . .

**(3) Supportability.** The more a medical source presents *relevant evidence* to support a medical opinion, ***particularly medical signs and laboratory findings***, the more weight we will give that medical opinion. The better an explanation a source provides for a ***medical*** opinion, the more weight we will give that medical opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on ***the degree to which they provide supporting explanations for their medical opinions***. We will evaluate the degree to which these medical opinions consider all of the pertinent evidence in your claim, including ***medical*** opinions of ***treating*** and other ***examining*** sources.

**(4) Consistency.** Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.

**(5) Specialization.** We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.

**(6) Other factors.** When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the medical opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that a medical source has, regardless of the source of that understanding, and the extent to which a medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. § 404.1527(c) (all emphasis added).

"Relevant evidence" is defined as "evidence tending to prove or disprove a matter in issue." Black's Law Dictionary, p. 677 (10th ed. 2014). While the traditional rules of evidence are suspended in ALJ proceedings (42 U.S.C. § 405(b)(1), 20 C.F.R. § 404.950(c)), the Federal Rules of Evidence provide that "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in

12

determining the action." Fed. R. Evid. 401. Additionally, the regulations provide that "evidence is anything you or anyone else submits to us or that we obtain *that relates to your claim*." 20 C.F.R. § 404.1512(b) (emphasis added). The Commissioner has also stated that "[e]ach case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." SSR 06-03p (eff. Aug. 9, 2006 to Mar. 26, 2017) (emphasis added).

### a.  *Facebook Perusal and Evidence Derived Therefrom*

Of particular import to the case at bar is the opinion of consultative examiner Karla McQuain, Ph.D. (TR 1515-21), which received "great weight" in the ALJ's decision (TR 30) and was relied upon in both state agency evaluations (TR 169-82, 185-204). As part of her medical evaluation, consultative examiner McQuain apparently performed a "quick perusal" of Plaintiff's social media profile on Facebook, and subsequently used information gleaned from the perusal as evidence in her Psychological Evaluation report. In the report, McQuain stated:

> It is interesting to note that a quick perusal of her Facebook page found that Carrie has over 800 friends, and she posts daily about events she attends such as Walden Farms, the lake, picnics, and family get-togethers. There were many pictures of food that she had cooked or crafts she wants to make. One post was thanking family and friends who helped her with their calls and texts. There were several posts regarding the legalization and smoking of marijuana. Her Facebook posts present her as much more personable and social than she reports in the interview.

TR 1519.

In discussing the medical opinion evidence provided by consultative examiner McQuain, the ALJ stated in her decision as follows.

> The examiner also noted that a quick perusal of claimant's Facebook page showed that she had over 800 friends, and she posted daily about events she attends such as Walden Farms, the lake, picnics, and family get-togethers. There were many pictures of food that she had cooked or crafts she wanted to make. One post was thanking family and friends who helped her with their calls and texts. There were

13

several posts regarding the legalization and smoking of marijuana. The examiner noted that claimant's Facebook posts presented her as much more personable and social than she reported in the interview. (Ex. 29F/5).

TR 29-30.

"The more a medical source presents **relevant evidence** to support a medical opinion, particularly **medical signs** and **laboratory findings**, the more weight we will give that medical opinion." 20 C.F.R. § 404.1527(c)(3) (emphasis added). The regulations define "medical signs" and "laboratory findings" as follows:

(b) **Signs** are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. **Psychiatric signs** are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated.

(c) **Laboratory findings** are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests.

20 C.F.R. § 404.1528 (eff. Mar. 31, 2006 to Mar. 26, 2017) (emphasis added). *See also* SSR 16-3p ("Titles II and XVI: Evaluation of Symptoms in Disability Claims") (eff. Mar. 28, 2016).

"**Objective medical evidence**" is defined as "medical signs and laboratory findings as defined in § 404.1528(b) and (c)." 20 C.F.R. § 404.1512(b)(1)(i) (eff. Apr. 20, 2015 to Mar. 26, 2017).

"The medical sources who perform consultative examinations will have a good understanding of our disability programs and their evidentiary requirements." 20 C.F.R. § 404.1519n (eff. through Mar. 26, 2017).

The reported results of your medical history, examination, requested laboratory findings, discussions and conclusions *must conform to accepted professional standards and practices in the medical field for a complete and competent*

14

*examination* . . . The medical source's report of the consultative examination should include the objective medical facts as well as observations and opinions.

§ 404.1519n(b) (emphasis added).

As can be seen, social media profiles are not included in the discussion of relevant evidence in the administrative regulations. Section 404.1513, "Medical and other evidence of your impairment(s)," also fails to mention social media profiles or Facebook pages as possible sources of evidence in DIB claims. It provides as follows:

**(b) Medical reports.** Medical reports should include—

(1)     Medical history;

(2)     Clinical findings (such as the results of physical or mental status examinations);

(3)     Laboratory findings (such as blood pressure, x-rays);

(4)     Diagnosis (statement of disease or injury based on its signs and symptoms);

(5)     Treatment prescribed with response, and prognosis; and

(6)     A statement about what you can still do despite your impairment(s) based on the acceptable medical source's findings on the factors under paragraphs (b)(1) through (b)(5) of this section (except in statutory blindness claims). Although we will request a medical source statement about what you can still do despite your impairment(s), the lack of the medical source statement will not make the report incomplete. See § 404.1527.

**(c) Statements about what you can still do.** At the administrative law judge and Appeals Council levels, we will consider residual functional capacity assessments made by State agency medical and psychological consultants, and other program physicians and psychologists to be "statements about what you can still do" made by nonexamining physicians and psychologists based on their review of the evidence in the case record. Statements about what you can still do (based on the acceptable medical source's findings on the factors under paragraphs (b)(1) through (b)(5) of this section) should describe, but are not limited to, the kinds of physical and mental capabilities listed as follows (See §§ 404.1527 and 404.1545(c)):

(1)     The acceptable medical source's opinion about your ability, despite your impairment(s), to do work-related activities such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and

traveling; and

    (2)     In cases of mental impairment(s), the acceptable medical source's opinion about your ability to understand, to carry out and remember instructions, and to respond appropriately to supervision, coworkers, and work pressures in a work setting.

**(d) Other sources.** In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to—

    (1)    Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists);

    (2)    Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers);

    (3)    Public and private social welfare agency personnel; and

    (4)    Other non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy).

20 C.F.R. § 404.1513 (eff. Sept. 3, 2013 to Mar. 26, 2017) (emphasis added).

Under the heading "Evidence from 'Other Sources,'" the Commissioner stated as follows:

As set forth in regulations at 20 CFR 404.1527(b) and 416.927(b), we consider all ***relevant evidence*** in the case record when we make a determination or decision about whether the individual is disabled. Evidence includes, but is not limited to, opinion evidence from "acceptable medical sources," medical sources who are not "acceptable medical sources," and "non-medical sources" who have seen the individual in their professional capacity. The weight to which such evidence may be entitled will vary according to the particular facts of the case, ***the source of the opinion***, including that source's qualifications, the issue(s) that the opinion is about, and many other factors.

SSR 06-03p (emphasis added).

Additionally, under the heading "Explanation of the Consideration Given to Opinions from 'Other Sources,'" SSR 06-03p states as follows:

Since there is a requirement to consider all relevant evidence in an individual's case

16

record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, *the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.*

*Id.* (emphasis added).

As can be seen, the Code of Federal Regulation and Social Security Rulings are replete with discussion of what can be considered as evidence by consultative examiners, and how ALJs are to consider the opinions of consultative examiners with respect to the forms of evidence on which they are based. Absent in the regulations and Social Security Rulings is any mention of evidence gathered from a claimant's social media profile or from a quick perusal of a claimant's Facebook page. This Court is not persuaded that perusing a claimant's Facebook page provides "relevant evidence" that serves as an adequate basis for "medical signs," "psychiatric signs," or "laboratory findings," as defined in the regulations. On the other hand, the Court is also cognizant that "fundamental principles of administrative law, however, teach that a federal court generally goes astray if it decides a question that has been delegated to an agency if that agency has not first had a chance to address the question." *Smith v. Berryhill*, __ U.S. ___, 139 S. Ct. 1765, 1779 (2019).

The *Smith* Court, deciding a somewhat different procedural question in the context of another Social Security claim, concluded that while "there is no jurisdictional bar to a court's reaching the merits," the proper course of action for a reviewing court is to remand the case to the Commissioner. *Id.* at 1779-80. Accordingly, while this Court is not the proper forum for deciding evidentiary questions not first addressed by the Commissioner, meaningful judicial review cannot

17

be accomplished on the administrative record in this case as it stands now. Because the ALJ simply parroted the "Facebook perusal" analysis performed by consultative examiner McQuain and provided only a conclusory discussion of why the opinion received "great weight," particularly due to any "medical signs" or "laboratory findings" on which the opinion is based, remand to the Commissioner, at the very least, is warranted. While it is within the province of the ALJ to determine the amount of weight each opinion is due, the ALJ must explain his rationale for doing so, and the ALJ's explanation must allow for meaningful judicial review.

This conclusion is not undermined by *Richardson v. Perales*, 402 U.S. 389 (1971), where the Supreme Court held that

> a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence may be received as evidence in a disability haring and, ***despite its hearsay character and an absence of cross-examination***, and despite the presence of opposing direct medical testimony and testimony by the claimant himself, ***may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant***, when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician.

*Perales*, 402 U.S. at 402 (emphasis added).

This case is distinguishable from that before the *Perales* Court for three main reasons. First, the *Perales* Court was concerned with the admissibility of the reports of consultative examiners at ALJ hearings, not the admissibility or reliability of the evidence relied upon by the consultative examiners in their opinions. As can be seen, the *Perales* Court took for granted that the "written report by a licensed physician" would be based on "medical findings" in the physician's "area of competence." Here, on the other hand, it is unascertainable which portions of consultative examiner McQuain's opinion were based on "medical findings" and which portions were based on "Facebook perusal."

18

Second, the *Perales* Court—sitting in 1971, before laptops, cell phones, internet access and social media were commonplace—could not have foreseen the depth and breadth of non-medical information that would be available to consultative examiners. Indeed, "the particular reports of the physicians who examined claimant Perales were based on ***personal*** consultation and ***personal*** examination and rested on accepted medical procedures and tests." 402 U.S. at 403 (emphasis added). It was presumed that consultative examiners' opinions would be based on personal observations and not internet observations, largely because if asked, Justice Douglas would probably presume that "Facebook" is an actual book with faces in it.

Third, the *Perales* Court merely concluded that the well-reasoned reports of consultative examiners were admissible at ALJ proceedings despite their hearsay character, but did not speak to the consultative examiners' reliance on hearsay themselves. The Court distinguished its decision from Chief Justice Hughes' general conclusion in *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 230 (1938) that "mere uncorroborated hearsay or rumor does not constitute substantial evidence." The Court explained:

> The constrast the Chief Justice was drawing, at the very page cited, was not with material that would be deemed formally inadmissible in judicial proceedings but with material 'without a basis in evidence having rational probative force.' This was not a blanket rejection by the Court of administrative reliance on hearsay irrespective of reliability and probative value. The opposite was the case.

*Perales*, 402 U.S. at 407-08.

Accordingly, the *Perales* Court concluded that the reports of consultative examiners were admissible "despite their *hearsay* character," but did not conclude that those reports should be admissible "despite their *hearsay within hearsay* character." Nor is that the conclusion this Court draws today. Rather, this Court concludes that without a more robust analysis from the ALJ with respect to the non-medical, non-personal, hearsay-within-hearsay "Facebook perusal" evidence

19

relied upon by a consultative examiner and integrated into the ALJ's own decision, the record in this case is not ripe for judicial review.

### b.    *Internal Inconsistency of Consultative Examiner Report*

After perusing the Plaintiff's Facebook page, consultative examiner McQuain concluded that Plaintiff was "malingering" as part of her diagnostic impression. TR 1520. This diagnostic impression substantially formed the basis of the non-examining state agency consultants Robert Estock, M.D. and Daniel Walter, Psy.D. at both the initial and reconsideration levels, where the phrase "**DX: Malingering (after checking clmt's Facebook page)**" was used multiple times. *See, e.g.,* TR 175, 176, 194 (emphasis added).

Importantly, however, consultative examiner McQuain mentioned "malingering" only twice:

> Carrie was cooperative throughout the interview. Her mood at the time of the evaluation appeared slightly anxious and irritable. Her affect was mood congruent. **She showed no evidence of malingering.** She gave reasonable effort throughout the interview.

TR 1518 (emphasis added).

>            Diagnostic Impression:
>                V65.2 **Malingering**
>                301.9 Unspecified Personality Disorder vs. 296.80 Unspecified
>                Bipolar and Related Disorder
>                                                    . . .

TR 1520 (emphasis added).

Neither the ALJ nor the non-examining agency consultants at the initial and reconsideration levels addressed this internal inconsistency. The ALJ then assigned great weight to this opinion and discounted other opinions. While there is other evidence in the record of a diagnostic impression of malingering, namely the consultative examination opinion of Jeffrey Viers, M.A. (TR 1186-91),[4] this does not excuse failure to address the internal inconsistency

---

[4] Consultative examiner Viers mentioned malingering as a high possibility. He stated:

present in the opinion relied upon not only at both the initial and reconsideration levels of Plaintiff's DIB application process, but also given "great weight" by the ALJ.

Indeed, the Social Security Administration's own rulings and regulations provide that the Commissioner will review consultative examination opinions for adequate evidence and internal consistency:

> We will review the report of the consultative examination to determine whether the specific information requested has been furnished. We will consider the following factors in reviewing the report:
>
> (1)      Whether the report provides **evidence which serves as an adequate basis** for decisionmaking in terms of the impairment it assesses;
>
> (2)      **Whether the report is internally consistent**; Whether all the diseases, impairments and complaints described in the history are adequately assessed and reported in the **clinical findings**; Whether the conclusions correlate the findings from your medical history, **clinical examination** and **laboratory tests** and explain all abnormalities;
>
> (3)      Whether the report is consistent with the other information available to us within the specialty of the examination requested; Whether the report fails to mention an important or relevant complaint within that specialty that is noted in other evidence in the file (e.g., your blindness in one eye, amputations, pain, alcoholism, depression);
>
> (4)      Whether this is an adequate report of examination as compared to standards set out in the course of a medical education; and
>
> (5)      Whether the report is properly signed.

20 C.F.R. § 404.1519p(a) (emphasis added).

The Sixth Circuit has articulated that "it is an elemental principle of administrative law that

---

There are risk factors for malingering including:
1. Presenting in a medicolegal context with the possibility of financial gain.
2. Minimizing and rationalizing substance abuse and legal problems.
3. History of antisocial behavior.
While the Court is not an expert in psychology, the Court does note that *every* DIB applicant is "presenting in a medicolegal context with the possibility of financial gain."

21

agencies are bound to follow their own regulations." *Wilson*, 378 F.3d at 545. "The Supreme Court has long recognized that a federal agency is obliged to abide by the regulations it promulgates." *Id.*, *citing Sameena, Inc. v. United States Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998), *citing Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959); *Service v. Dulles*, 354 U.S. 363, 372 (1957); *Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954). Additionally, this Court has previously stated that "in *Wilson*, we said that to excuse noncompliance simply because there is substantial evidence that a different outcome on remand is unlikely would not be right." *Goppert*, 2018 WL 513435 at *10.

In the ALJ's decision, she provided the following discussion of consultative examiner McQuain's opinion:

> Upon examination, the examiner noted that claimant was fully oriented. She was tired throughout the interview but maintained good eye contact. She had a constant slight tremor and twitch. She was cooperative throughout the interview.
> . . .
>
> She was able to complete simple addition, subtraction, multiplication, and division tasks in her head. She showed a good capacity for abstract thinking and understanding. **She showed no evidence of malingering.** She gave reasonable effort throughout the interview.
> . . .
>
> The diagnostic impression was: **Malingering**, Unspecified Personality Disorder vs. Unspecified Bipolar and Related Disorder; Opioid Use Disorder (taking since 2009); Alcohol Use Disorder (Rule Out, prior history of alcoholism still drinking); Cannabis Use Disorder (Rule Out); Past History of Polysubstance Abuse Disorder; Prior history of Tobacco Use Disorder. (Ex. 29F/6).
>
> Dr. McQuain's opinion at Exhibit 29F s [*sic*] given great weight **because it is well supported by the clinical signs and findings** and is consistent with the other evidence of record.

TR 29-30 (emphasis added).

As can be seen, the ALJ's decision does not meaningfully discuss or evaluate consultative examiner McQuain's opinion, nor does it sufficiently substantiate the weight afforded thereto by the ALJ in accordance with the agency's own regulations. Accordingly, the Court cannot

22

determine whether the ALJ properly considered the medical opinion evidence of record.

Although the ALJ states that consultative examiner McQuain's opinion received "great weight" because it is well supported by "clinical signs and findings," the ALJ's own opinion, and that of the non-examining state agency consultants below, demonstrates that the medical opinion evidence was not considered for its supportability, as defined by 20 C.F.R. § 404.1527(c)(3), or for its internal consistency or evidentiary adequacy, as articulated in 20 C.F.R. § 404.1519p(a). Consultative examiner McQuain, in her assessment of this case, seems to have relied on evidence which does not serve as an adequate basis for decisionmaking in terms of the impairment it assesses, and the opinion is internally inconsistent on its face. What's more, the opinion was heavily relied upon by agency consultants and was assigned great weight by the ALJ in making her disability determination.

Accordingly, under the *Wilson* and *Goppert* standards, this action should be remanded to the Commissioner. Because the Court recommends that this action be remanded for further consideration, the Court will not address Plaintiff's remaining statements of error.

### IV.    RECOMMENDATION

Upon consideration of the parties' filings, the administrative record and applicable law, and for the foregoing reasons, the Magistrate Judge RECOMMENDS that Plaintiff's Motion for Judgment on the Administrative Record, Docket No. 18, be GRANTED and that this action be REMANDED for further consideration of the medical opinion evidence in a manner not inconsistent with this Report and Recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

Based upon the record, a judicial award of benefits would not be proper as the proof of disability is not overwhelming nor is the proof of disability strong while the evidence to the

contrary is lacking. Thus, the Court concludes that the ALJ's failure to comply with the Social Security Administration's regulations and rulings warrants remand.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourten (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); FED. R. CIV. P. 72.

_____

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**